IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CYNTHIA J. THOMPSON,
      Plaintiff,

v.

TRANSAM TRUCKING, INC., et al.,
      Defendants.

Case No.: 2:08-cv-927
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on the Motion of Defendants Columbus Orthopaedic Group, Inc. ("Columbus Orthopaedic") and Robert Steensen, M.D. (together "Physician Defendants") to Dismiss Counts VIII, IX, and X of Plaintiff's Amended Complaint ("Motion to Dismiss") (Doc. # 30), the Memorandum Contra of Plaintiff Cynthia J. Thompson ("Plaintiff") to Physician Defendants' Motion to Dismiss Counts VIII, IX, and X of Plaintiff's Amended Complaint (Doc. # 33), and the Reply Memorandum of Physician Defendants in Support of their Motion Dismiss Counts VIII, IX, and X of Plaintiff's Amended Complaint (Doc. # 37). For the reasons that follow, the Court **GRANTS in part and DENIES in part** Physician Defendants' Motion to Dismiss.

### I. Background

Defendant TransAm Trucking, Inc. ("TransAm Trucking") is the Plan Sponsor for Defendant TransAm Trucking's Employee Benefit Plan ("Health Plan"). (Amended Complaint, Doc. # 16 ¶ 5.) The Health Plan is an employee welfare benefit plan as defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. *Id.* ¶ 3. Defendant FMH Benefit Services, Inc. ("FMH") supervises the claims for the Health Plan. *Id.* ¶ 7. Plaintiff was a participant in the Health Plan and was entitled to receive certain health

care benefits under it. *Id.* ¶ 16.

On January 17, 2008, Plaintiff sought treatment for her knee from Defendant Robert Steensen, M.D. who practices with Defendant Columbus Orthopaedic. *Id.* ¶¶ 9, 17. During this office visit and prior to rendering any medical care, an employee of Columbus Orthopaedic contacted Defendant FMH to obtain a pre-certification authorization code. *Id.* ¶ 19. Defendant FMH provided a pre-certification authorization code of 08 018-0054. *Id.* ¶ 21. Plaintiff alleges that "Dr. Steensen's office represented to [her] that her medical care would be covered as an 'in-network' expense, or, alternatively, failed to inform her otherwise." *Id.* ¶ 22.

On February 8, 2008, Plaintiff was admitted to Mount Carmel Hospital to undergo the surgical procedure. *Id.* ¶ 24. In connection with the surgery, Plaintiff incurred medical bills totaling approximately $85,000.00 and submitted claims for payment of these bills to Defendant FMH pursuant to the terms of the Health Plan. *Id.* ¶¶ 25, 26. FMH paid a portion of the claims but denied the remaining bills on the basis that Mount Carmel Hospital was not an in-network provider, *i.e.*, a participant in the Preferred Health Care Network. *Id.* ¶ 27. While FMH paid the medical bills submitted by Dr. Steensen at the in-network rate, the medical bills from the hospital were paid at the out-of-network rate. *Id.* ¶¶ 29, 30.

Plaintiff filed this action to recover monetary damages incurred from the medical treatment at Mount Carmel Hospital that were not paid under the Health Plan. She has asserted claims against Defendants TransAm Trucking, the Health Plan, and FMH ("Health Plan Defendants") under ERISA and state law. In addition, Plaintiff has asserted claims against Physician Defendants based upon state law.

Currently before the Court is Physician Defendants' fully briefed motion to dismiss.

(Doc. # 30.)

## II. Standard

Physician Defendants move under Fed. R. Civ. P. 12(b)(6), which provides for dismissal of actions that fail to state a claim upon which relief can be granted. Under this standard, a court must construe the complaint in favor of the plaintiff, accept the factual allegations contained in the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).[1] The claims must be "plausible" and not merely "conceivable." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## III. Analysis

Plaintiff alleges claims for promissory estoppel, negligent misrepresentation, and professional negligence against Physician Defendants. Physician Defendants argue that these three claims fail because they are preempted by ERISA and, even if they were not preempted they would fail on the merits.

---

[1]The Court notes that both parties argue under a now defunct standard, *i.e.*, a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As the Sixth Circuit has explained:

> In [*Twombly*], the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

## A. ERISA Preemption

There is difference between complete preemption under 29 U.S.C. § 1132(a) and conflict preemption under 29 U.S.C. § 1144(a): complete preemption is an exception to the well-pleaded complaint rule that has jurisdictional consequences since it recharacterizes state law claims as claims arising under federal law, and conflict preemption, which does not recharacterize claims as arising under federal law, but rather serves as a defense to state law claims. *See e.g., Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007) (addressing each type of preemption). This action involves conflict preemption, whereby ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). Thus, the issue before this Court is whether the state law claims against Physician Defendants "relate to" the Health Plan.

The United States Court of Appeals for the Sixth Circuit explains the difficulty found in this endeavor:

> The United States Supreme Court has dealt with the "opaque language in ERISA's § 514(a)" approximately twenty times over the last twenty-four years. *See De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 808-09 (1997) (noting the numerous attempts by the Court to define the boundaries of ERISA preemption). In its earlier cases, the Supreme Court noted that "the pre-emption clause is conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990), and "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (internal quotation omitted). More recently, however, the Supreme Court has narrowed the preemptive scope of ERISA, moving away from the broadest meaning of the provision. The Court has stated that the phrase "insofar as they . . . relate" contains words of limitation that were purposefully written into the statute. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).
>
> If the term "relate to" was allowed to reach to its most logical extension, "pre-emption would never run its course." *Id.*; *see also Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 335 (1997)

> (Scalia, J. concurring) (noting that "applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else"). The effect of such a broad reading "would be to read Congress's words of limitation as mere sham, and to read the presumption against preemption out of the law whenever Congress speaks to the matter with generality." *Travelers Ins. Co.*, 514 U.S. at 655.

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) (referred to hereafter as "*PONI*").

Therefore, the Sixth Circuit instructs that when "interpreting ERISA's preemption clause, a court 'must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.'" *Id.* at 698 (citing *Travelers Ins. Co.*, 514 U.S. at 656). Thus, "ERISA preempts state laws that (1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *Id.* (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. *Id.* "Congress did not intend, however, for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.'" *Id.* (citing *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998)). *See also Airparts Co. v. Custom Benefit Servs.*, 28 F.3d 1062, 1065 (10th Cir. 1994) (" 'laws of general application--not specifically targeting ERISA plans--that involve traditional areas of state regulation and do not affect 'relations among the principal ERISA entities' ");

5

*Hospice of Metro Denver, Inc. v. Group Health Ins., Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) (no preemption unless there is an effect on the relations among the principal ERISA entities).

Applying these principles to this case, the Court concludes that the state law claims against Physician Defendants are not preempted by ERISA. Physician Defendants' argument that Plaintiff's claims are preempted because they are "to recover benefits under the health plan" and that the remedy sought by Plaintiff is "primarily plan-related" is unpersuasive. (Doc. # 30 at 5–7; Doc. # 37 at 1.)

That is, Plaintiff's claims against Physician Defendants have absolutely no potential to affect the structure, the administration, or the type of benefits provided by the Health Plan. *PONI*, 399 F.3d at 698. Nor do the claims provide an alternate enforcement mechanism. *See id.* For, unlike Plaintiff's claims against Health Plan Defendants, Plaintiff's claims against Physician Defendants are not made in an effort to enforce or modify the terms of the plan. "[M]erely because [Plaintiff's] damages would be based upon the amount of potential plan benefits does not implicate the administration of the plan, and is not consequential enough to connect the action with, or relate the action to, the plan." *Hospice of Metro Denver, Inc. v. Group Health Ins., Inc.*, 944 F.2d at 755. Instead, the state laws of negligent misrepresentation, professional negligence, and promissory estoppel are laws of general application--not specifically targeting ERISA plans--that involve traditional areas of state regulation and do not affect relations among the principal ERISA entities. *See Airparts Co.*, 28 F.3d at 1065.

Moreover, Plaintiff's claims against Physician Defendants do not implicate relations among traditional ERISA plan entities. While Plaintiff is certainly a traditional plan entity, Physician Defendants clearly are not. *See PONI*, 399 F.3d at 700 ("While PONI is certainly a

traditional ERISA plan entity, MVP is clearly not," subjecting the relationship to state law). *See also Airparts Co.*, 28 F.3d at 1065 ("As a corollary, actions that affect the relations between one or more of these plan entities and an outside party similarly escape preemption."); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990) (same). Indeed, the claims against Physician Defendants have no potential to bind TransAm Trucking or the Health Plan "to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *PONI*, 399 F.3d at 700.

Accordingly, Plaintiff's claims against Physician Defendants, Counts VIII, IX, and X, are not preempted by ERISA.

**B. Claims Against Physician Defendants**

Physician Defendants argue that Plaintiff's claims against them for promissory estoppel, negligent misrepresentation, and professional negligence fail to state claims upon which relief can be granted.

### 1. Promissory Estoppel[2]

"To establish a claim based upon promissory estoppel, the plaintiff must demonstrate that there was a promise, clear and unambiguous in its terms; reliance by the party to whom the promise is made; that the reliance was reasonable and foreseeable; and that the party claiming estoppel was injured by the reliance." *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App.3d 281, 284 (Ohio App. 1992). Physician Defendants argue that the "doctrine of

---

[2]The Court notes that in the briefing, both parties refer to Plaintiff's claim of "promissory estoppel" and yet rely on the law related to equitable estoppel. (Doc. # 30 at 8–11; Doc. # 33 at 13–15.) However, in the Reply Brief, Physician Defendants recognize this error and rely upon the appropriate law.

promissory estoppel is inapplicable in this case because Plaintiff's claim is not premised on any promise made by either Dr. Steensen or Columbus Orthopaedics." (Doc. # 37 at 7.) Instead, they claim that Plaintiff mischaracterizes this alleged misrepresentation of fact as a promise. This Court disagrees.

Physician Defendants' alleged representation that Plaintiff's surgery would be covered at the in-network rate carries with it, if proven to be true, an implicit promise of payment. (*See* Doc. # 16 ¶ 93 Physician Defendants "made a clear and unambiguous promise to Plaintiff" that her knee surgery "would be covered as an 'in-network' expense".) Further, Plaintiff alleges that it "was reasonable and foreseeable for Plaintiff to rely on this promise" and that Plaintiff did "reasonably rel[y] on this promise" by changing "her position for the worse by incurring medical expenses at Mount Carmel, which she believed to be a preferred provider, but which was later declared by Defendant FMH to be 'out-of-network.' " *Id.* ¶¶ 94–96.

Accordingly, construing the Amended Complaint in favor of Plaintiff and accepting the factual allegations contained in it as true, the Court concludes that Plaintiff has set forth a plausible claim for promissory estoppel. *See Twombly*, 550 U.S. at 555-56.

### 2. Negligent Misrepresentation

"The elements of negligent misrepresentation are as follows: 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4 (1989) (citing

3 Restatement of the Law 2d, Torts (1965) 126–27, Section 552(1), *Gutter v. Dow Jones, Inc.*, 22 Ohio St. 3d 286 (1986), and *Haddon View Investment Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154 (1982)). "Liability for negligent misrepresentation arises from 'the actor's negligence in failing to exercise reasonable care or competence in supplying accurate information.' " *In re Nat'l Century Fin. Enters.*, 580 F. Supp. 2d 630, 646 (S.D. Ohio 2008) (citing *Rece v. Dominion Homes, Inc.*, 2008 Ohio 24, 2008 WL 73707, at *6 (Ohio Ct. App. 2008)). Physician Defendants argue that they are entitled to dismissal of this claim against them because Plaintiff cannot justifiably rely on representations made with respect to her insurance coverage when the insured is in a position to acquire the necessary information by reviewing his or her own insurance policy. (Doc. # 30 at 9.) Physician Defendants' argument is not well taken.

In a claim for negligent misrepresentation under Ohio law, this Court has stated that "the issue of whether a party's reliance was justifiable is largely a question of fact inappropriate for resolution on a motion to dismiss." *In re Nat'l Century Fin. Enters.*, 580 F. Supp. 2d at 648–49 (citing *In re National Century Financial Enterprises, Inc., Inv. Litig.*, 541 F. Supp. 2d 986, 1004 (S.D. Ohio 2007) and *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 590 (6th Cir. 2000)). *See also Davis v. Montenery*, 173 Ohio App. 3d 740, 752, 2007 Ohio 6221 (Ohio Ct. App. 2007) ("[A] determination regarding justifiable reliance involves a fact-based inquiry into the circumstances of the claim and the relationship between the parties.").

Consequently, construing the Amended Complaint in favor of Plaintiff and accepting the factual allegations contained in it as true, the Court concludes that Plaintiff has set forth a plausible claim for negligent misrepresentation. *See Twombly*, 550 U.S. at 555-56.

### 3. Professional Negligence

The elements of a professional negligence claim, *i.e.*, a medical malpractice action, under Ohio law are "(1) that there existed a duty on behalf of the physician-defendant to the plaintiff; (2) the standard of care recognized by the medical community; (3) the failure of the defendant to meet that standard of care; and (4) a causal link between the negligent act and the injuries sustained." *Henry v. Clermont County*, Case No. C-1-04-320, 2005 U.S. Dist. LEXIS 9334, at *12 (S.D. May 6, 2005) (citing *Ohio Hinkle v. Cleveland Clinic Found.*, 159 Ohio App. 3d 351, 367, 2004 Ohio 6853, 823 N.E.2d 945, 958 (2004) and *Bruni v. Tatsumi*, 46 Ohio St. 2d 127, syllabus P1 (1976)). Physician Defendants argue that claims of professional negligence brought against health care providers, of necessity, relate to their medical judgment. Physician Defendants rely on *Smith v. Botsford General Hosp.*, 419 F.3d 513 (6th Cir. 2005), which explains the distinction between claims of ordinary negligence and professional negligence:

> If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved.

*Id.* at 518 (citation omitted). Physician Defendants' argument is well taken.

Here, the conduct alleged does not involve any medical judgment. Instead, it relates solely to the extent of Plaintiff's coverage under her Health Plan.

In a footnote Plaintiff requests that if this claim is dismissed, she be permitted to amend her complaint to allege ordinary negligence. This request, however, is simply insufficient to save the professional negligence claim or to properly move to amend the complaint.

Accordingly, Plaintiff's factual allegations supporting her claim of professional

negligence are not "enough to raise a right to relief above the speculative level" *See Twombly*, 550 U.S. at 555-56.

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Physician Defendants' Motion to Dismiss.  (Doc. # 30.)  Specifically, the motion is **GRANTED** as to Plaintiff's claim of professional negligence and **DENIED** as to the remaining claims.

**IT IS SO ORDERED.**

>     **/s/ Gregory L. Frost**
>     **GREGORY L. FROST**
>     **UNITED STATES DISTRICT JUDGE**