# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**CYNTHIA J. THOMPSON,**

        **Plaintiff,**                           **Case No. 2:08-cv-927**
                                                    **JUDGE GREGORY L. FROST**
        **v.**                                   **Magistrate Judge Terence P. Kemp**

**TRANSAM TRUCKING, INC., et al.,**

        **Defendants.**

### OPINION AND ORDER

This matter is before the Court for consideration of Defendant Transam Trucking, Inc.,

the Transam Trucking, Inc. Employee Benefit Plan, and FMH Benefit Services, Inc.'s ("Health

Plan Defendants") Motion for Summary Judgment and for Judgment on the Pleadings (Doc. #

39), Plaintiff's Memorandum in Opposition to the Health Plan Defendants' Motion (Doc. # 50),

the Health Plan Defendants' Reply Memorandum in Further Support of their Motion (Doc. # 53),

Plaintiff's Motion for Leave to File Sur-Repy *Instanter* (Doc. # 54), the Health Plan Defendants'

Supplemental Brief on the Issue of Plaintiff's Entitlement to Additional Benefits Under ERISA

("the Health Plan Defendants' Motion for Judgment on the Administrative Record") (Doc. # 72),

Plaintiff's Motion for Judgment on the Administrative Record ("Plaintiff's Motion for Judgment

on the Administrative Record") (Doc. # 73), the Health Plan Defendants' Supplemental

Memorandum in Further Support of their Motion for Summary Judgment and Motion for

Judgment on the Pleadings ("the Health Plan Defendants' Motion for Summary Judgment on

Plaintiff's Promissory Estoppel Claim") (Doc. # 78), Plaintiff's Memorandum in Opposition to

the Health Plan Defendants' Motion for Summary Judgment on Plaintiff's Promissory Estoppel

1

Claim (Doc. # 80), the Health Plan Defendants' Reply Brief in Further Support of their Motion

for Summary Judgment on Plaintiff's Promissory Estoppel Claim (Doc. # 81), Plaintiff's Motion

for Partial Summary Judgment on Count IV (Non-Disclosure) of Plaintiff's First Amended

Complaint ("Plaintiff's Motion for Summary Judgment on her Non-Disclosure Claim") (Doc. #

74), the Health Plan Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary

Judgment on her Non-Disclosure Claim (Doc. # 77), and Plaintiff's Reply Memorandum in

Support of Plaintiff's Motion for Summary Judgment on her Non-Disclosure Claim (Doc. # 79).


For the reasons that follow, the Court **GRANTS** the Health Plan Defendants' Motion for

Judgment on the Administrative Record, **DENIES** Plaintiff's Motion for Judgment on the

Administrative Record, **GRANTS** Plaintiff's Motion for Leave to File Sur-Repy *Instanter*,

**GRANTS** the Health Plan Defendants' Motion for Summary Judgment on Plaintiff's Promissory

Estoppel Claim, and **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary

Judgment on her Non-Disclosure Claim.

## I. Background

Defendant TransAm Trucking, Inc. is the plan sponsor and administrator for Defendant

TransAM Trucking's Employee Benefit Plan ("Plan").  The Plan is an employee welfare benefit

plan and is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§ 1001, *et seq*.  Defendant FMH Benefit Services, Inc. ("FMH") supervises the claims

for the Plan.  Plaintiff was a participant in the Plan and was entitled to receive certain health care

benefits under it.

On January 17, 2008, Plaintiff sought treatment for her knee from Defendant Robert

2

Steensen, M.D. who practices with Defendant Columbus Orthopaedic ("Physician Defendants"). During this office visit and prior to rendering any medical care, an employee of Columbus Orthopaedic contacted FMH to obtain a pre-certification authorization code, which was provided by FMH.  Plaintiff testified that Dr. Steensen's office represented to her that her medical care would be covered as an "in-network" expense.

On February 8, 2008, Plaintiff was admitted to Mount Carmel Hospital to undergo knee surgery.  In connection with the surgery, Plaintiff incurred medical bills totaling approximately $85,000.00 and submitted claims for payment of these bills to FMH.  FMH paid 25% of the amount due to Mount Carmel, which is the out-of-network rate, and paid 80% of the amount due to Dr. Steensen, which is the in-network rate.  Plaintiff filed this action to recover the medical costs she incurred at Mount Carmel that would have been paid if it had been considered to be an in-network provider or if the services were covered under the Plan's exception allowing in-network payment when the plan participant received in-network care at a non-network provider.

In the amended complaint (Doc. # 16), Plaintiff alleged claims for relief against the Physician Defendants based upon state law, which the Physician Defendants moved to have dismissed (Doc. # 30).  This Court granted in part and denied in part the Physician Defendants' motion, granting it in regards to Plaintiff's claim for professional negligence and denying it in regards to Plaintiff's claims for negligent misrepresentation and promissory estoppel.  (Doc. # 43.)

Plaintiff alleges these same state law claims against the Health Plan Defendants. Plaintiff, however, moved to dismiss her claims of negligent misrepresentation and professional negligence against the Health Plan Defendants, which this Court granted.  (Doc. # 59.)  Plaintiff

also alleges claims against the Health Plan Defendants for entitlement to benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), failure to provide requested Plan documents required under ERISA, 29 U.S.C. § 1132(c), and for failure to provide notice of entitlement to continuing coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. 1161, *et. seq.* ("COBRA").

On May 8, 2009, the Health Plan Defendants filed the Health Plan Defendants' Motion for Summary Judgment and for Judgment on the Pleadings (Doc. # 39) and on July 31, 2009, Plaintiff filed Plaintiff's Motion for Leave to File Sur-Reply *Instanter* (Doc. # 54).  After consideration of both of those motions, this Court issued an Opinion and Order in which it indicated that it could not appropriately decide the motions because the parties had failed to file the administrative record.  (Doc. # 59.)  In the Opinion and Order, the Court explained that summary judgment was not the appropriate standard to utilize for review of a denial of benefits determination, it held in abeyance the Health Plan Defendants' Motion for Summary Judgment and for Judgment on the Pleadings (Doc. # 39) and Plaintiff's Motion for Leave to File Sur-Reply *Instanter*, and it directed the parties to file the administrative record.  The parties timely complied with the Court's order, jointly filing the administrative record.  (Doc. # 60) (cited as "A.R.1").[1]

Once the administrative record was filed, the Court again reviewed the Health Plan Defendants' Motion for Summary Judgment and for Judgment on the Pleadings and Plaintiff's Motion for Leave to File Sur-Reply *Instanter*.  On January 5, 2010, the Court issued an Opinion

---

[1]The Court will cite to the page numbers assigned to this document by the Court's electronic filing system as opposed to any page numbers that are on the records making up that document.

and Order in which it denied the Health Plan Defendants' Motion for Summary Judgment and for Judgment on the Pleadings, denied as moot Plaintiff's Motion for Leave to File Sur-Reply *Instanter*, remanded the action to the Plan administrator with instructions to conduct a timely, full and fair review of Plaintiff's benefits claim, and administratively closed the case pending completion of the administrative appeal process.  (Doc. # 61.)  The Court also directed the parties to contact the Court within one week of the final administrative decision so that, if necessary, the case could be restored to the active docket.

On approximately April 8, 2010, the parties contacted the Court to inform it that the administrative process was complete and that FMH had upheld the denial of benefits requested by Plaintiff.  The Court scheduled a status conference for April 14, 2010.  (Doc. # 62.)  As a result of the conference, the Court restored this case to its active docket, entered judgment against Plaintiff and in favor of the Health Plan Defendants on Plaintiff's claim for relief filed under COBRA, directed the parties to supplement the administrative record filed before this Court, and set forth a schedule to accommodate the discovery and briefing of the remaining issues currently before the Court.  (Doc. # 63.)  Those issues are (1) review of the benefits denial; (2) Plaintiff's promissory estoppel claim against the Health Plan Defendants; (3) Plaintiff's claim that the Health Plan Defendants failed to provide requested Plan documents; and (4) Plaintiff's negligent misrepresentation and promissory estoppel claims against the Physician Defendants.  The parties agreed that after this Court determined the first three issues, which deal only with the Health Plan Defendants, it would schedule a status conference to determine how the fourth issue, dealing only with the Physician Defendants, would be addressed. Consequently, the Court is currently considering only the first three issues.

## II.  Plaintiff's Entitlement to Benefits Claim

Plaintiff's entitlement to benefits claim was originally briefed in the Health Plan

Defendants' Motion for Summary Judgment and for Judgment on the Pleadings (Doc. # 39),

Plaintiff's Memorandum in Opposition to the Health Plan Defendants' Motion for Summary

Judgment and for Judgment on the Pleadings (Doc. # 50), and the Health Plan Defendants' Reply

Memorandum in Further Support of their Motion (Doc. # 53).  As per the request of the parties,

the Court currently re-examines those briefs in conjunction with the Health Plan Defendants'

Motion for Judgment on the Administrative Record (Doc. # 72), Plaintiff's Motion for Judgment

on the Administrative Record (Doc. # 73), the administrative record (Doc. # 60), and the

supplement to the Administrative Record (Doc. # 65) (cited as "A.R.2").[2]

### A.  Standard

Plaintiff's entitlement to benefits claim is governed by ERISA.  "ERISA provides that

insurance companies 'shall discharge [their] duties with respect to a plan solely in the interest of

the participants and beneficiaries and [] for the exclusive purpose of [] providing benefits to

participants and their beneficiaries . . . in accordance with the documents and instruments

governing the plan insofar as such documents and instruments are consistent with the provisions

of this subchapter . . .' " *Ruchow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865 (6th Cir. 2007)

(alterations in original) (quoting 29 U.S.C. § 1104(a)(1)).

It is well-settled that in reviewing an administrator's decision to deny benefits, a district

court reviews the record *de novo* "unless the benefit plan gives the administrator or fiduciary

---

[2]The Court will cite to the page numbers assigned to this document by the Court's
electronic filing system as opposed to any page numbers that are on the records making up that
document.

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) (citing *Firestone Tire*

*& Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  "If a plan affords such discretion to an

administrator or fiduciary, [the court] review[s] the denial of benefits only to determine if it was

'arbitrary and capricious,' *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991), and

will uphold [its] decision if it is 'rational in light of the plan's provisions,' *Borda v. Hardy,*

*Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quotation omitted)."  *Id.* at

456-57.   Under this deferential standard of review, the benefits decision will be upheld if " 'it is

possible to offer a reasoned explanation, based on the evidence, for the particular outcome.' "

*Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561-62 (6th Cir. 2007) (quoting *Davis v.*

*Kentucky Fin.*, 887 F.2d 689, 693 (6th Cir. 1989)).  *See also Helfman v. GE Group Life Assur.*

*Co.*, 573 F.3d 383, 392 (6th Cir. 2009) ("Under this standard, we uphold the administrator's

decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by

substantial evidence.' "  *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008)

(quoting *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006)).  Though highly

deferential, however, the arbitrary and capricious standard "is not a rubber stamp for the

administrator's determination."  *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006).

     Plaintiff argues that the Court must employ a *de novo* review because, at the very least

the phrase upon which the denial was based is ambiguous.  (Doc. # 73 at 7.)  Plaintiff relies on

*Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994) for this proposition.  *Wulf*,

however, is inapposite.  As the Sixth Circuit explained to a party who relied upon *Wulf* for a

similar proposition:

> [T]he cases [the plaintiff] cites in support of this argument are inapposite here because none involved a plan that gave the administrator the discretion to interpret the terms of the plan. *See, e.g., Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir.1994) (interpreting the term "termination of employment" *de novo-i.e.*, without deferring to either party's interpretation-only after concluding that the plan did not give the administrator discretion sufficient to warrant deference to administrator's interpretation"). . . . The law is clear that where the plan gives the administrator discretion to interpret its terms, the administrator's interpretation must be upheld unless it is arbitrary and capricious, or "unreasonable." *Wendy's* [*Int'l, Inc. v. Karsko*], 94 F.3d [1010,] 1012 [(6th Cir. 1996)].

*Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998). Here FMH, unlike the plan administrator in *Wulf*, was given the discretion to interpret the terms of the plan. Thus, the arbitrary and capricious standard of review is applicable to the instant action regardless of whether the terms of the plan are considered ambiguous.

## B. Plaintiff's Appeal

On March 1, 2010, after this Court remanded this case to the Plan administrator for a full and fair review of Plaintiff's benefits claim, the administrator delegated the supervision of the appeal to FMH, and Plaintiff submitted to FMH a written request for commencement of the appeal process. There is no dispute that the Health Plan Defendants provided a timely review of Plaintiff's benefits claim.

Plaintiff appealed the denial of payment of benefits at the in-network rate for three medical bills incurred during her knee surgery. Two of the bills were for the services provided by Mount Carmel Hospital and one for the anesthesiologist provided by Mount Carmel. Defendants paid these medical expenses at the out-of-network rate because this facility and physician were not preferred providers under contract with the Plan. In her appeal, Plaintiff argued:

> It is Ms. Thompson's position that the medical expenses incurred at Mount Carmel

8

Hospital are covered as in-network expenses pursuant to the health Plan's provision providing that "In-Network care by Non-Network Provider" is covered at the [in-network] rate.  Here, Ms. Thompson's procedure was performed by Dr. Steensen, and was covered as an "in-network" expense.  Dr. Steensen's procedure was performed at Mount Carmel (a "non-network" provider), and thus Ms. Thompson clearly received "in-network care by a non-network provider."  Accordingly, FMH is left no choice but to authorize payment of Mount Carmel's bills at the "in-network" rate, and pursuant to the express terms set forth in the Health Plan's Summary Plan Description.  In addition, Ms. Thompson asserts that because FMH represented to Dr. Steensen's office that the subject medical procedure was fully covered at the "in-network" rate, Mount Carmel's medical bills must be paid at the "in-network" rate, in accordance with this representation.

A.R.2 at 2.

## C.  The Health Plan Defendants' Review of Plaintiff's Appeal

The Health Plan Defendants began the review process in accordance with the Plan, which provides that a review of claims shall be provided for by the Plan administrator (or its designee, here FMH), and will not be the same person, or a subordinate of the person who initially decided the claim.  A.R.1 at 46.  In this instance, FMH reviewed the denial of Plaintiff's benefits claim. The review was performed and signed by Michael LaHood, who neither made the initial decision, nor is a subordinate to the person who made the initial decision.

After review, FMH reaffirmed the original denial of payment at the in-network rate for the three Mount Carmel bills.  FMH based its decision on a consideration of 1) whether adequate in-network hospital facilities existed in Plaintiff's geographic area that could have provided the services at an "in- network" rate; and, finding that an adequate number existed, 2) whether the terms of the Plan's Summary Plan Description ("SPD") or the SPD's Schedule of Benefits which provided for an "in-network" rate for "non-network providers" was applicable to Plaintiff's claims.

In construing the Plan, FMH referred to the applicable language in the SPD, as well as its

Schedule of Benefits, and noted that the SPD expressly notified Plaintiff that payment of covered expenses under the Plan would vary, and that those paid to healthcare providers outside the company's "PPO" network, *i.e.*, its preferred provider network, would receive lower payment from the Plan.  The decision indicated that both Mount Carmel and Mount Carmel's anesthesiologist were not in the preferred providers network.

FMH then reviewed the purpose behind the provision in the Schedule of Benefits that provided for a reimbursement of expenses at the in-network rate for "In-Network care by Non-Network Provider."  FMH reviewed the Processing Guidelines, which provides directions for the processing of claims under the Plan.  The administrator indicated that the section of the Processing Guidelines titled "Medical Services" offered guidance on the issue under consideration.  A.R.2 at 12.  In that section, there is a subsection titled "Ancillary," which states: "If a network facility was used, then the ancillary providers *i.e. pathologist, radiologist, anesthesiologist* should also be processed as a network provider using **capacity code 01.**"  *Id.* (emphases in original).  FMH explained that, based upon these guidelines and the plain language of the SPD, the "In-Network care by Non-Network Provider" provision is utilized by the Plan only in those instances where "a network facility was used[.]"  A.R.2 at 6.  FMH further explained that "M[ount] Carmel Medical Center would not be classified as an ancillary provider based on the administrative practice to view only certain types of physicians [as opposed to facilities] as ancillary."  *Id.*

Additionally, FMH pointed out that the second reference to allowing non-PPO providers to be paid in-network rates could be found in a footnote in the Schedule of Benefits, which states:

> If you receive Emergency care at a non-PPO Hospital for conditions that are life-threatening, payment will be made at the PPO level for Covered Expenses received in the emergency room.  If you are then admitted to the non-PPO Hospital, Covered Expenses for Hospital and Physician services will be paid at the PPO level for up to two days where your condition remains life threatening.  Afer the second day at the non-PPO Hospital, Covered Expenses will be paid at the non-PPO level.

*Id.*  FMH then explained that since the knee surgery was pre-authorized more than ten days prior to the admission and was elective on the part of Plaintiff, the Plan considered the surgery and hospital admission not life threatening.

Finally, FMH considered whether Plaintiff had adequate time to exercise her choice of hospital for her knee surgery, which was considered an elective, non-emergent surgery.  FMH noted that Plaintiff had been issued an insurance card that set forth the telephone number for her to call to determine if a provider was a member of the preferred provider network.  This telephone number is listed as a separate telephone number from the telephone number listed for pre-certification of a medical procedure.  FMH explained that the process performed by Dr. Steensen's office, *i.e.*, obtaining pre-certification is a separate phone number because it is an entirely separate process.

**D.  FMH's Decision**

Plaintiff offers several reasons why she believes that FMH's decision was arbitrary and capricious.  Plaintiff argues, first, that she offers the "only plausible interpretation" of the provision "In-Network care by a Non-Network provider":

> Here, Plaintiff did receive in-network care by a non-network provider.  Period. [Dr. Steensen is in-network.  Mount Carmel is non-network.]  Certainly, this is the only plausible interpretation of this phrase.

(Doc. # 73 at 11.)  Plaintiff bolsters this interpretation with the fact that a "preferred provider" is defined as "[a]ny Physician, medical professional or medical facility listed in network directories

11

under contract with the Plan."  A.R.1 at 16.  Consequently, Plaintiff contends that Mount

Carmel, a medical facility, is properly considered a non-network provider.  Plaintiff further

contends that if the Court considers the phrase ambiguous, Plaintiff's interpretation of the phrase

is still the only proper one on which to rely because the phrase must be strictly construed against

its drafters, *i.e.*, against the Health Plan Defendants.  Plaintiff's arguments are not well taken.

Initially, the Court notes that in its review of FMH's decision, the Court is not engaging

in a strict contract interpretation review of the language of the Plan and the documents governing

the Plan.  Instead, the Court is tasked with determining whether the administrator's decision is

"rational in light of the plan's provisions."  *Borda*, 138 F.3d at 1066.  The decision is rational in

light of the Plan's provisions if "it is possible to offer a reasoned explanation, based on the

evidence, for the particular outcome."  *Davis*, 887 F.2d at 693.  While the Court agrees that

Plaintiff's interpretation of the phrase is certainly a reasonable one, the Health Plan Defendants

have offered a reasoned explanation, based upon the evidence, for their interpretation of the

phrase.

That is, the Health Plan Defendants explain that the phrase "non-network provider" is

provided in the Plan so as to prevent a penalty against individuals who attempted to stay in-

network but were given treatment by non-network physicians regardless of that attempt.  In the

appeal denial, FMH explained that, "[a]s a general rule, patients have no choice over which

emergency room doctor they get or who will administer anesthesia and interpret lab work or ex-

rays."  A.R.2 at 6.  Consequently, the Plan allows in-network payment "to several types of

ancillary providers (*e.g.* emergency room physicians, pathologists, radiologists, or

anesthesiologists) where the member has chosen PPO physicians and hospitals for care."  *Id.*

12

FMH relied upon the language of the SPD and the Processing Guidelines to support its explanation of the definition of the phrase in the SPD's Schedule of Benefits upon which the parties disagree.

As to the disagreement as to the meaning of the phrase, Plaintiff argues that the Court must construe the phrase strictly against the Plan's drafters.  As support for this proposition, Plaintiff relies on two cases that are inapposite.  That is, neither case upon which Plaintiff relies is a denial of benefits case subject to an arbitrary and capricious standard of review.  *See West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 484 F.3d 395, 409 (6th Cir. 2007) (determining whether the Pension Plan's failure to use the "whipsaw calculation" when determining the value of the lump-sum distributions to plan participants caused a forfeiture of benefits in violation of ERISA) and *Regents of the Univ. of Mich. v. Employees of Agency Rent-A-Car Hosp. Ass'n*, 122 F.3d 336, 340 (6th Cir. 1997) (considering whether the benefits that were due to the plan participants should be paid by the husband's insurance plan or the wife's plan).  This Court cannot engage in a *de novo* review here.  *See Wulf*, 26 F.3d at 1373 (in context where administrator is given discretion, the court could not engage in a "*de novo-i.e.*, without deferring to either party's interpretation").

Moreover, the Court notes that the administrator's decision is rational in light of the plan's provisions, which provide for two specific categories of payments for services.  Payment for physicians and facilities that have contracted with the Plan so as to be awarded a preferred status and those providers who are not in contractual privity with the Plan.  Application of the provision at issue in the way requested by Plaintiff would permit covered individuals free reign to utilize out-of-network facilities and physicians even though in-network facilities and

13

physicians were conveniently available to them.  This result would circumvent the Plan's offer

of in-network rates only to certain physicians and facilities that have contracted with the Plan to

obtain preferred status.

In Plaintiff's second argument, Plaintiff contends that the FMH's denial of her benefits

claim was arbitrary and capricious because the Processing Guidelines upon which the

administrator relied do not reasonably interpret the Plan.  (Doc. # 73 at 11) ("A plan

administrator can rely on internal rules or policies in construing the terms of an employee

benefits plan only if these rules or policies reasonably interpret the plan.  *Smith v. Health Servs.*

*of Coshocton*, 314 Fed. Appx. 848, 859 (6th Cir. 2009) (citing *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8

F.3d 1094, 1100 (6th Cir. 1993))").  Plaintiff contends that the Processing Guidelines do not

reasonably interpret the Plan because they are not consistent with the Plan and are an attempt to

modify its terms for the sole purpose of denying Plaintiff her medical benefits.  This Court

disagrees.

FMH explained that the phrase "non-network providers," refers only to certain types of

physicians considered as ancillary providers.  FMH relies on the Processing Guidelines'

instruction that ancillary providers consist only of certain types of physicians, over whom a

covered individual had no control in choosing.  Even if this interpretation is not considered to be

the *most* reasonable interpretation, it is rational in light of the Plan's provisions.

Third, Plaintiff requests the Court to find the Health Plan Defendants' decision arbitrary

and capricious because she disagrees with FMH's conclusion that Plaintiff failed to make every

effort to obtain medical care at an in-network facility.  Plaintiff argues that it was Dr. Steensen

who elected to perform the surgery at a non-network facility and that if she had been given the

14

choice, she would not have chosen for him to do so.  This argument, however, misses the mark.

In the denial of Plaintiff's appeal, FMH makes the observation that Plaintiff herself failed to

place a telephone call or to visit the website that listed participating providers.  Both the

telephone number and the website were listed on her membership card and the Plan directs its

members that it is their responsibility to determine whether a provider is preferred.  FMH,

therefore, concluded that Plaintiff failed to make every effort available to her to obtain medical

care at an in-network facility.  This Court agrees with that determination.

In this same vein, Plaintiff argues that, instead of determining whether Mount Carmel

was in-network herself, she relied upon Dr. Steensen's staff to obtain that information.  In

Plaintiff's appeal letter, Plaintiff contends that she was told by her surgeon's office that the

benefits would be paid at the in-network rate.  Plaintiff, however, submitted no evidence from

the individual who allegedly spoke to FMH on her behalf.  The Health Plan Defendants note

that, even if Dr. Steensen's office would not voluntarily provide such a statement, Dr. Steensen

and his medical practice are named as defendants in this action and Plaintiff could have obtained

through discovery information regarding Plaintiff's claim that FMH had expressly and falsely

represented to Dr. Steensen's staff that the hospital costs would be treated as in-network.  The

Health Plan Defendants reasonably argue that absent providing some evidence to FMH that

verified that her doctor's office had contacted the appropriate number to determine whether

Mount Carmel was an in-network facility and that the office employee had been given incorrect

information, FMH was free to determine that Plaintiff failed to make every effort to stay within

network.  This Court agrees with that conclusion.

Fourth, Plaintiff argues that FMH's decision was arbitrary and capricious because it

misinterpreted the Processing Guidelines.  Plaintiff points out that in a separate section of the

Processing Guidelines, the section on how a claim is to be "coded" and entered into the

computer network, the Guidelines indicate that non-network charges are to be coded as in-

network (code 01) "[i]f provider is network *or* services were done at a network facility."  A.R.1

at 15.  (emphasis added).  Plaintiff interprets this to mean that if either the provider (Dr.

Steensen) or the facility (Mount Carmel) are in-network, then the claim must be designated as in-

network.  While this is certainly a reasonable interpretation at first glance, when the language is

put in context, it is clear that it is not the correct interpretation.  That is, the language upon which

Plaintiff relies specifically indicates that it refers only to a category labeled as "TA02," defined

as the "Affordable Option" plan as opposed to the category listed as "TA01" and defined as the

PPO plan.  Under the TA01 category, there is no similar language.  Thus, there are at least two

interpretations of the Guidelines instruction on coding claims.  The fact that FMH does not agree

with Plaintiff's interpretation does not mean that the FMH's interpretation is arbitrary and

capricious.

Finally, Plaintiff argues that the fact that the Health Plan Defendants are operating under

an inherent conflict of interest weighs heavily in favor of finding that their decision to deny

Plaintiff's benefits claim was arbitrary and capricious.  Plaintiff, however, has failed to offer any

evidence at all as to how this conflict of interest affected FMH's decision to deny benefits.  The

Sixth Circuit instructs:

> [M]ere allegations of the existence of a structural conflict of interest are not enough;
> there must be some evidence that the alleged conflict of interest affected the plan
> administrator's decision to deny benefits.  *See Peruzzi v. Summa Med. Plan*, 137
> F.3d 431, 433 (6th Cir. 1998) ("Because our review of the record reveals no
> significant evidence that SummaCare based its determination on the costs associated
> with Mrs. Peruzzi's treatment . . . we cannot conclude that SummaCare was

> motivated by self-interest in this instance"); *see also Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998) ("We presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict"); *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996) ("[A] reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists, . . . but that the conflict affected the reasonableness of the Committee's decision") (internal quotation and citations omitted).

*Cochran v. Trans-General Life Ins. Co.*, 12 Fed. Appx. 277, 281 (6th Cir. 2001).

Plaintiff here sets forth *no* evidence that the conflict actually affected the decision at issue here. *See e.g., Peruzzi*, 137 F.3d at 433 (finding that the plaintiff's evidence that defendant SummaCare's medical director conferred with two members of the plan's management, including the chief financial officer, shortly before the claim was denied was insufficient evidence that the conflict of interest affected the defendant's decision to deny benefits). Plaintiff relies merely upon the fact that the conflict exists. Thus, this factor too does not support Plaintiff's argument that FMH's decision to deny her benefits claim was arbitrary and capricious.

In summary, while Plaintiff's interpretation of the provision at issue is not unreasonable or implausible, that is not the inquiry required of this Court. This Court must review FMH's decision to determine if it was arbitrary or capricious. In doing so, this Court has reviewed in detail each stated reason for FMH's decision as well as each of Plaintiff's arguments offered to support her claim that the decision was arbitrary and capricious. In other words, the Court has not simply "rubber stamped" FMH's decision. After this analysis, the Court concludes that the decision to deny Plaintiff's benefits claim was the result of deliberate and principled reasoning; rational in light of the Plan's provisions.

17

**E.  Plaintiff's Request for Attorneys' Fees**

Plaintiff requests attorneys fees, presenting evidence that she has been billed for

$32,146.15 since the filing of this action.  The amount requested by Plaintiff includes attorneys'

fees for the portion of this action that this Court found in her favor and remanded to the Plan

administrator.  (Doc. # 61) (finding the Health Plan Defendants' denial of benefits was arbitrary

and capricious).  The amount requested by Plaintiff also includes attorneys' fees for the portion

of this action after remand.  As set forth above, the Court herein determined that the Health Plan

Defendants' denial of benefits was not arbitrary and capricious.  Plaintiff's motion, as it

currently stands, is therefore not well taken and will be denied without prejudice.

**F.  Conclusion:  Plaintiff's Entitlement to Benefits Claim**

Based on the foregoing, the Court **GRANTS** the Health Plan Defendants' Motion for

Judgment on the Administrative Record and **DENIES** Plaintiff's Motion for Judgment on the

Administrative Record as it relates to Plaintiff's entitlement to benefits claim and **DENIES**

without prejudice to refiling the portion of Plaintiff's Motion related to her request for attorneys'

fees.

### III.  Plaintiff's Promissory Estoppel Claim

The second issue remaining before the Court after it restored this action to its active

docket is Plaintiff's promissory estoppel claim she filed against the Health Plan Defendants.

Plaintiff argues that the Health Plan Defendants should be estopped from denying in-network

payment to Mount Carmel Hospital for the costs associated with her knee surgery because the

Health Plan Defendants represented that the treatment would be covered at the in-network rate.

The parties originally briefed this issue in the Health Plan Defendants' Motion for

18

Summary Judgment and for Judgment on the Pleadings (Doc. # 39), Plaintiff's Memorandum in

Opposition to the Health Plan Defendants' Motion for Summary Judgment and for Judgment on

the Pleadings (Doc. # 50), the Health Plan Defendants' Reply Memorandum in Further Support

of their Motion (Doc. # 53), and Plaintiff's Motion for Leave to File Sur-Repy *Instanter* (Doc. #

54).  As per the request of the parties, the Court currently re-examines those briefs in conjunction

with the Health Plan Defendants' Motion for Summary Judgment on Plaintiff's Promissory

Estoppel Claim (Doc. # 78), Plaintiff's Memorandum in Opposition to the Health Plan

Defendants' Motion for Summary Judgment on Plaintiff's Promissory Estoppel Claim (Doc. #

80), and the Health Plan Defendants' Reply Brief in Further Support of their Motion for

Summary Judgment on Plaintiff's Promissory Estoppel Claim (Doc. # 81).

## A.  Plaintiff's Motion for Leave to File Sur-Repy *Instanter*

Plaintiff requests that the Court permit her to file a surreply because the Health Plan

Defendants addressed certain issues for the first time in their reply in support of the Health Plan

Defendants' Motion for Summary Judgment and for Judgment on the Pleadings.  The Court

**GRANTS** Plaintiff's motion for good cause shown.  *See* S.D. Ohio Civ. R. 7.2(a)(2).

The Clerk shall detach the surreply and place it on the docket.  (Doc. # 54-1).  The Court

has considered the surreply with the other briefs on Plaintiff's promissory estoppel claim.

## B.  The Health Plan Defendants' Motion for Summary Judgment on Plaintiff's Promissory Estoppel Claim

### 1.  Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The

19

Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248).

### 2. Discussion

The Health Plan Defendants argue that they are entitled to summary judgment on Plaintiff's promissory estoppel claim for two reasons.  First, they contend that the claim is preempted by ERISA.  Second, the Health Plan Defendants argue that even if the claim is not preempted by ERISA, it fails because Plaintiff cannot establish the elements required for such a claim.  The Court finds it unnecessary to engage in a preemption analysis because even if the

20

claim is not preempted it cannot survive summary judgment.  Plaintiff has failed to establish all of the elements of a promissory claim.

> The elements of a promissory estoppel claim in the context of an ERISA action are:
>
> 1) conduct or language amounting to a representation of material fact;
>
> 2) awareness of the true facts by the party to be estopped;
>
> 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
>
> 4) unawareness of the true facts by the party asserting the estoppel; and
>
> 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991) (citation omitted).  The Health Plan Defendants argue that Plaintiff cannot meet the fourth element.  This Court agrees.

As to the fourth element, Plaintiff contends that "there is no question" that she "was not aware of the true facts concerning the amount of coverage available to her if her surgery was performed at Mount Carmel."  (Doc. # 80 at 5.)  Plaintiff supports this argument by pointing out that the SPD does not contain a listing of the Plan's preferred providers, that at the relevant time she had never heard of the organization "PHCS," which is the entity that informs whether a provider is preferred, and that she delegated the duty to call about Mount Carmel's status to an employee of Dr. Steensen's office who called on her behalf, which is not specifically prohibited by the Plan.  Plaintiff relies on the SPD language that provides:

> Your Employee Health Care Plan ID card contains a toll-free phone number and/or a website you can use to obtain information about the health care providers who are members of the provider network(s).

A.R.1 at 2.  As to that provision, Plaintiff states:

> Plaintiff did exactly that.  Plaintiff provided her Plan ID card to her Physician's office, and, on her behalf, the Physician's office telephoned the number on the back of Plaintiff's insurance card to verify Plaintiff's insurance coverage.

(Doc. # 80 at 5.)

Even when viewing all of the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, her estoppel claim fails.  That is, Plaintiff argues and presents evidence supporting only that she had no actual knowledge of the fact that Mount Carmel was not an in-network facility.  The fourth element of her estoppel claim, however, requires that Plaintiff possessed *either* actual knowledge of the truth *or* had the means by which with reasonable diligence she could acquire the knowledge.  This Sixth Circuit explains:

> If, at the time when [the party claiming the benefit of estoppel] acted, such party had knowledge of the truth, **or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means**, he cannot claim to have been misled by relying upon the representation or concealment.

*Trustees of the Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 593 (6th Cir. 2000) (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 n.10 (1984)) (emphasis added by circuit court).  *See also Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir. 1984) (stating that, for estoppel to apply, representation must be made "to a party without knowledge of the facts and without the means to ascertain them").  The *Gibbons* court held that the defendants in that case failed to establish the fourth element of a promissory estoppel claim because, although they did not have actual knowledge of the material fact at issue, they had the means by which with reasonable diligence they could have acquired the knowledge.

22

*Gibbons* involved a collective bargaining agreement pursuant to which the defendants were required to make monthly payments into a fund overseen by the plaintiffs.  In 1990, an audit of the defendants' payroll records revealed that the defendants owed unpaid contributions to the fund.  The plaintiffs filed a lawsuit under ERISA to recover the unpaid amount, which resulted in a declaratory judgment against the defendants for approximately $70,000.  From 1991-1994, the defendants failed to make any further payments into the fund.  In 1994 an auditor contacted the defendants to request access to payroll records to perform another audit.  At that time, the defendants informed the auditor of the defendants' belief that the 1991 judgment terminated the collective bargaining agreement.  Although both the defendants and the plaintiff's auditor expressed an intent to check their files to determine whether defendants were party to the collective bargaining agreement, no further contact occurred until 1996 when the defendants again refused to permit an audit.

The plaintiffs filed a second action against the defendants under ERISA seeking recovery of unpaid contributions.  The defendants sought to defend against plaintiffs' allegations on the basis of estoppel due to their purported reliance upon the auditor's statement that she would check her files regarding whether the judgment terminated the collective bargaining agreement. The district court denied the plaintiffs' motion for summary judgment and held in favor of the defendants on the basis of estoppel.  On appeal, the Sixth Circuit overturned the decision of the district court finding that the defendants had failed to establish the fourth element of equitable estoppel.  *Gibbons*, 209 F.3d at 592 (finding "even more substantial deficiencies in the district court's analysis" of the fourth factor of the estoppel claim because it "found 'little doubt' that the" factor was satisfied only by the absence of actual knowledge).  Despite any statement made

by the auditor on behalf of the plaintiffs, the court noted that the defendant Gibbons acknowledged that he had received and retained copies of the collective bargaining agreements after signing them.  Therefore, the court found that the defendants had adequate means "through the agreements themselves, the presence or absence of letters terminating the agreements, and communication with union officials to acquire knowledge by reasonable diligence as to whether the agreements were still in effect."  *Id.* 593.

Similar to the *Gibbons* defendants' reliance on the plaintiff's auditor to determine the *Gibbons* defendants' responsibilities under the collective bargaining agreement, Plaintiff in the instant action relied upon the statements of a third party to determine her rights under the Plan. Like the *Gibbons* defendants too, Plaintiff had adequate means to determine the information upon which she relied on another to provide.  Indeed, not only were the means available, Plaintiff had made use of these means to determine the in-network status of a surgeon less than ten months prior to the surgery at issue here.  Specifically, Plaintiff contacted FMH and had a discussion with a representative who explained to her that she was required to use the telephone number for PCHS listed on her health insurance card to determine whether an orthopedic surgeon was "in-network" under the Plan.  Plaintiff testified that she understood that she needed to call that number in order to determine the status of a provider.

As *Gibbons* makes clear, it is not enough to lack actual knowledge of the material fact at issue if the individual claiming benefit of the estoppel had a means to acquire through reasonable diligence the knowledge and failed to do so.  Plaintiff has admitted, under oath, that she not only had knowledge that a means existed to determine whether Mount Carmel was "in-network," she had previously personally made use of those exact means.  Under these circumstances, the Court

finds that, like the *Gibbons* defendants' failure to review the plain language of the collective

bargaining agreement, Plaintiff's failure to personally contact FMH constitutes negligence which

precludes her estoppel claim.  Therefore, the Court concludes that Plaintiff has failed to make a

showing sufficient to establish the existence of an element that is essential to her claim.  *See*

*Catrett*, 477 U.S. at 322.

### 3.  Conclusion:  Plaintiff's Promissory Estoppel Claim

According to the above analysis, the Court **GRANTS** the Health Plan Defendants'

Motion for Summary Judgment on Plaintiff's Promissory Estoppel Claim.

### IV.  Plaintiff's Non-Disclosure Claim

In Plaintiff's Motion for Summary Judgment on her Non-Disclosure Claim, Plaintiff

contends, and the Health Plan Defendants do not deny, that the Health Plan Defendants failed to

provide documents that she requested within 30 days, as required by ERISA.

### A.  Applicable Law

ERISA provides:

> The administrator shall, upon written request of any participant or beneficiary,
> furnish a copy of the latest updated summary plan description, and the latest annual
> report, any terminal report, the bargaining agreement, trust agreement, contract, or
> other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

With regard to the penalties available for failure to provide the documents, the Sixth

Circuit explains:

> ERISA gives district courts "discretion" to impose up to $110[3] a day in penalties

---

[3]Pursuant to 29 CFR 2575.502c-1, for violations occurring after July 29, 2007, "the
maximum amount of the civil monetary penalty" was "increased from $100 a day to $110 a

> against "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request."  29 U.S.C. § 1132(c)(1)(B); *see also* 29 C.F.R. § 2575.502c-1.

*Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431-32 (6th Cir. 2007) (alterations in original).  The

Sixth Circuit has also noted that § 1132 gives "teeth" to ERISA's disclosure provisions, which,

Congress enacted to "ensure that 'the individual participant knows exactly where he stands with

respect to the plan.' "  *Minadeo v. ICI Paints*, 398 F.3d 751, 757 (6th Cir. 2005) (citing

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. No. 93-533,

p. 11 (1973)).

Whether to assess penalties and in what amount rests in the discretion of the Court.

*Bartling v. Fruehauf*, 29 F.3d 1062, 1068 (6th Cir. 1994).  "[T]he statute does not require a

district court to take testimony or make any particular findings before assessing a penalty."

*Lampkins v. Golden*, 1996 U.S. App. Lexis 33271, *11-12 (6th Cir. 1996).

## B.  Statutory Penalties

On June 26, 2008, Plaintiff's counsel sent a letter via regular mail and via facsimile to

FMH, requesting a copy of the SPD.  FMH received the request, but made no response to

Plaintiff's counsel.  On July 15, 2008, Plaintiff's counsel sent a second letter to FMH requesting

the SPD.  On August 8, 2008, FMH sent a letter to Plaintiff's counsel notifying him that his

request for Plan documents should be made to the administrator of the Plan, TransAm Trucking,

Inc.

On August 14, 2008, Plaintiff's counsel sent a letter to TransAm Trucking, Inc., in which

---

day."  The Health Plan Defendants do not dispute that $110 a day is the maximum penalty.

he requested not only the SPD, but also the Plan's latest annual report and administration agreement under which the Plan is established or operated. Having received no response to his letter, on September 17, 2008, Plaintiff's counsel telephoned Cheryl Burke, claims manager at FMH, to inquire as to the status of the requested documents and to renew the request.

On October 1, 2008, FMH provided Plaintiff's counsel with the SPD.

On March 5, 2009, the Health Plan Defendants' attorneys provided Plaintiff's counsel with the annual report and the administration agreement.

Based upon this uncontroverted evidence, the Court determines that on August 14, 2008, Plaintiff's attorney made a request for the SPD, the annual report, and the administration agreement to the party that is statutorily required to provide Plan documents to Plaintiff, *i.e.*, the administrator of the Plan, TransAm Trucking, Inc. The first two letters sent by Plaintiff are not relevant to the determination of the date Plaintiff properly made the document request because liability cannot be imposed unless and until a plan participant requests information from the plan administrator. *See Hiney Printing Co. v Brantner*, 243 F.3d 956, 961 (6th Cir. 2007) (holding a plan administrator cannot be liable for statutory penalties if the request for information was not directed to it). Likewise, the telephone call is irrelevant, because the statute specifically requires the request to be made in writing. Providing the administrator three days to receive the August 14, 2008 letter, the Court finds that the 30 day period provided by ERISA in which the administrator was required to mail the requested documents began to run on August 18, 2008. Therefore, the documents were required to be provided to Plaintiff by September 17, 2008.

The SPD was not provided to Plaintiff until October 1, 2008, 14 days past the statutory deadline. The annual report and administrative agreement were not provided to Plaintiff until

March 5, 2009, 169 days past the statutory deadline.

The Health Plan Defendants first argue that Plaintiff's claims against defendants FMH and TransAm Trucking, Inc. Employment Benefit Plan must fail because they are not administrators of the Plan. Plaintiff does not dispute this argument nor could she effectively do so. Only plan administrators are liable for statutory penalties under 29 U.S.C. § 1132(c). *Caffey v. UNUM Life Insurance Co.*, 302 F.3d 576, 584 (6th Cir. 2002) (citing *Hiney Printing Co*, 243 F.3d 956 (6th Cir. 2001)). In this instance, it is undisputed that TransAm Trucking, Inc. is the plan administrator. Consequently, neither the Plan itself nor FMH may be held liable for statutory penalties imposed under 29 U.S.C. § 1132(c).

Second, TransAm Trucking, Inc. argues that Plaintiff is not entitled to summary judgment because material issues of fact exist regarding whether Plaintiff was prejudiced in receiving documents past the statutory 30 day deadline. Prejudice, however, is not a prerequisite to the imposition of statutory penalties. *See Daniel*, 839 F.2d at 268 (a plaintiff may still recover statutory damages despite a lack of prejudice). The proper analysis to determine whether discretionary penalties should be imposed for a defendant's violation of the ERISA disclosure provisions is set forth properly by a sister district court:

> While a showing of injury or prejudice to the claimant is a logical concern, *Gatlin v. Nat'l Healthcare Corp.*, 16 Fed. Appx. 283, 289 (6th Cir. 2001) (citing *Bartling*, 29 F.3d at 1068-69), such a showing is not essential. *Steadman v. Bd. of Trustees*, 2006 U.S. Dist. Lexis 43919, *16-18 (N.D. Ohio 2006). Rather, the purpose of the statute, as interpreted "[i]n this circuit . . . is to punish plan administrators who fail to comply with requests for documents which ERISA requires them to provide." *Osborn v. Knights of Columbus*, 401 F. Supp.2d 822, 825-26 (N. D. Ohio 2005); *see also Bartling*, 29 F.3d at 1068. Even mere negligence might justify an award of statutory penalties, *McGrath v. Lockheed Martin Corp.*, 48 Fed. Appx. 543, 557 (6th Cir. 2002), because "the failure of defendant's process for responding to requests for information is itself a matter of Congressional concern." *Dooley v. GMC*, 1997 U.S. Dist. Lexis 13168 at *6 (E.D. Mich. 1997).

28

*Weddell v. Ret. Comm. of the Whirlpool Prod. Emp. Ret. Plan*, 43 Employee Benefits Cas.

(BNA) 1257, 2007 U.S. Dist. LEXIS 92461, at *37-38 (N.D. Ohio Dec. 17, 2007) (awarding the

plaintiff $60 per day for 237 days for a total of $14,220).  Indeed, the Sixth Circuit has been

clear as to the purpose of the disclosure provisions of ERISA, stating that "the purpose of the

statute was to induce administrators to timely provide participants with requested plan

documents, and to penalize failures to do so." *Bartling*, 29 F.3d at 1068.  *See also Osborne v.*

*Knights of Columbus*, 401 F. Supp. 2d 822, 825-26 (N.D. Ohio 2005) ("In this circuit, however,

the purpose of § 1132(c)(1) is to punish plan administrators who fail to comply with requests for

documents which ERISA requires them to provide.").

There are several cases in this circuit that inform this Court's awarding of damages.  *See*

*Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 290-91 (6th Cir. 2008) (affirming award of

$100 per day from the date the plaintiff filed her complaint rather than from the date the plaintiff

submitted her written request because the district court "reasonably concluded" that the

defendant in good faith believed that the plaintiff had withdrawn her request based on a

discussion between the defendant and the plaintiff's attorney); *Bartling*, 29 F.3d at 1069

(affirming $100 per day per document to be split among all plaintiffs); *Gatlin*, 16 F. App'x at

289-90 (affirming award of $100 per day when the defendant "sent the plan documents 151 days

after they were originally requested" where the delay hindered the plaintiff's ability to appeal the

decision at the earliest opportunity);  *McGrath v. Lockheed Martin Corp*., 48 F. App'x 543, 557

(6th Cir. 2002) (affirming district court's award of $50 for a 154 day delay where there was no

evidence of bad faith and prejudice was not clearly present); *Daniel v. Eaton Corp.*, 839 F.2d

263, 268 (6th Cir. 1988) (affirming $25 a day for 278 days in situation where the failure to

provide the documents was not deliberate but was based on neglect and "the record casts doubt

on any claim of prejudice"), *disapproved on other grounds in Brown v. Ampco-Pittsburgh Corp.*,

876 F.2d 546, 549 (6th 1989); *Logan v. UniCare Life & Health Ins., Inc.*, 2007 U.S. Dist. Lexis

45654, at *10-11 (E. D. Mich. 2007) (finding prejudice to the plaintiff and no bad faith by

defendants and awarding $110 per day for 341 days, or $34,540); *Shephard v. O'Quinn*, 2006

U.S. Dist. Lexis 24252, at *9-10 (E. D. Tenn. 2006) (finding prejudice to the plaintiff and bad

faith by the defendants and awarding $100 per day for 826 days, or $90,860.00); *Mitchell v.

DaimlerChrysler Corp. Salaried Emples. Ret. Plan*, 2006 U.S. Dist. Lexis 27459, at *25-26

(N.D. Ohio 2006) (finding lack of bad faith by the defendants, lack of prejudice to the plaintiff,

and relatively short delay and awarding $50 per day for a total of $2,800); *Dies v. Provident Life

& Accident Ins. Co.*, 2006 U.S. Dist. Lexis 84480, at *27-28 (M. D. Tenn. 2006) (awarding $25

per day per document for lengthy delays of 160 and 413 days, for a total of $28,650 "regardless

whether Plaintiff was actually prejudiced").

Considering the factors relevant to a statutory penalty award, the Court determines that

TransAm Trucking, Inc. did not deliberately act in bad faith in failing to fulfill its statutory duty

to provide Plaintiff with the documents she properly requested, and instead, were negligent.

Further, the Court concludes that it is unclear whether Plaintiff suffered prejudice based upon the

administrator's failure to provide the documents.  It appears that Plaintiff was certainly

prejudiced to some extent by the administrator's failure to provide the SPD before Plaintiff was

required to appeal the denial of her benefits claims and to file this lawsuit–Plaintiff relied heavily

on the SPD during her appeal after remand, something she was unable to do during her first

appeal.  However, it appears equally as likely that Plaintiff suffered no prejudice because the

administrator's failure to provide the annual report and administrative agreement.  Plaintiff did

not rely on either of these two documents in her appeal or her claims before this Court.  The

Court also considers the fact that, while Plaintiff properly requested the documents from the plan

administrator only once, Plaintiff twice requested the documents from the plan supervisor, who

ultimately was the entity that provided the SPD.  Indeed, none of the requested documents were

actually provided to Plaintiff by the administrator, TransAm Trucking, Inc.  Finally, the Court

notes that courts regularly find that a more severe penalty is warranted when the delay in

providing the documents is lengthy, as is the case here.  Together these factors support a penalty

award against TransAm Trucking, Inc. in the amount of $50 per day per document for a total of

$17,600.

## C.  Attorney Fees

Plaintiff has requested the costs and attorney fees associated with this motion.  The Court

has discretion to award costs and attorney fees pursuant to 29 U.S.C. § 1132(g)(1).  When

determining whether to award attorney fees, the Court must consider the following factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing
> party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an
> award on other persons under similar circumstances; (4) whether the party
> requesting fees sought to confer a common benefit on all participants and
> beneficiaries of an ERISA plan or resolve significant legal questions regarding
> ERISA; and (5) the relative merits of the parties' positions.

*Secretary of Dep't of Labor v. King*, 775 F.2d 666, 670 (6th Cir. 1985).  These factors are not

dispositive and "no single factor is determinative."  *Maurer v Joy Techs., Inc.*, 212 F.3d 907, 919

(6th Cir. 2000).

Regarding the first factor, the Court has determined that the Health Plan Defendants did

not act in bad faith when it failed to provide Plaintiff with the requested documents.  Regarding

the second and third factors, Plaintiff has not provided any information on the Health Plan

Defendants ability to pay, and the statutory penalty imposed above will provide a sufficient

deterrent. *See Logan*, 2007 U.S. Dist. LEXIS 45654 (in denying request for attorneys' fees,

finding that the statutory penalty imposed was sufficient deterrent).  Regarding the fourth factor,

Plaintiff did not seek to provide a common benefit.  And, as to the fifth factor, it is the only

factor that weighs in favor of Plaintiff.

After considering all five factors in the context of this action, the Court denies Plaintiff's

request for attorney fees as it related to her non-disclosure claim

**D.  Conclusion: Plaintiff's Non-Disclosure Claim**

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Summary Judgment

on her Non-Disclosure Claim as it relates to her request for statutory penalties and **DENIES** her

motion as it relates to her request for attorneys' fees related to that claim.

### V.  Conclusion

For the reasons set forth above, the Court:

1.  **GRANTS** Plaintiff's Motion for Leave to File Sur-Repy *Instanter* (Doc. # 54) and

**DIRECTS** the Clerk shall detach the surreply and place it on the docket (Doc. # 54-1);

2.  **GRANTS** the Health Plan Defendants' Motion for Judgment on the Administrative

Record (Doc. # 39);

3.  **DENIES** Plaintiff's Motion for Judgment on the Administrative Record Based as it

relates to Plaintiff's entitlement to benefits claim and **DENIES** without prejudice to refiling the

portion of Plaintiff's Motion related to her request for attorneys' fees (Doc. # 73); and

4.  **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment on

her Non-Disclosure Claim.  Specifically, the Court **GRANTS** that motion as it relates to

Plaintiff's request for statutory penalties under ERISA and **DENIES** the motion as it relates to

Plaintiff's request for attorneys' fees.  Defendant TransAm Trucking, Inc., are **ORDERED** to

make payment to Plaintiff in the amount of $17,600 within 30 days of the date of this Opinion

and Order.

**IT IS SO ORDERED.**

/s/ **Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**