UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CYNTHIA J. THOMPSON,

       Plaintiff,                             Case No. 2:08-cv-927
                                                  JUDGE GREGORY L. FROST
      v.                                       Magistrate Judge Terence P. Kemp

TRANSAM TRUCKING, INC., et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court on the Motion of Defendants Columbus Orthopaedic Group, Inc. and Robert Steensen, M.D. for Summary Judgment (ECF No. 88), Plaintiff Cynthia Thompson's Memorandum in Opposition to Defendants Columbus Orthopaedic Group's and Dr. Robert Steensen's Motion for Summary Judgment (ECF No. 91), and the Reply Memorandum of Defendants Columbus Orthopaedic Group, Inc. and Robert Steensen, M.D. in Support of Motion for Summary Judgment Filed January 13, 2011 (ECF No. 92).  For the reasons that follow, the Court **GRANTS** the Motion of Defendants Columbus Orthopaedic Group, Inc. and Robert Steensen, M.D. for Summary Judgment.

**I.  Background**

Plaintiff filed the complaint in this action on October 1, 2008 (ECF No. 4), and filed an amended complaint upon leave of Court on January 29, 2009 (ECF No. 16).  The amended complaint names as defendants FMH Benefit Services, Inc. ("FMH"), TransAm Trucking, Inc., the TransAm Trucking, Inc. Employee Benefit Plan ("Health Plan Defendants"), Columbus Orthopaedic Group, Inc., and Robert Steensen, M.D. ("Physician Defendants").

Defendant TransAm Trucking, Inc. is the plan sponsor and administrator for Defendant TransAm Trucking's Employee Benefit Plan ("Plan"). The Plan is an employee welfare benefit plan and is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Defendant FMH supervises the claims for the Plan. Plaintiff was a participant in the Plan and was entitled to receive certain health care benefits under it.

On January 17, 2008, Plaintiff sought treatment for her knee from Defendant Robert Steensen, M.D., who practices with Defendant Columbus Orthopaedic Group, Inc. During this office visit and prior to rendering any medical care, Debie Spain, an employee of Columbus Orthopaedic, contacted FMH to obtain a pre-certification authorization code, which was provided by FMH. Plaintiff testified that Spain represented to her on that date that her knee surgery would be fully covered as an "in-network" expense and that she was told the same thing at another time when Plaintiff asked for confirmation of this information. Plaintiff testified that Spain specifically indicated that both Dr. Steensen and Mount Carmel West Hospital were preferred in-network providers.

On February 8, 2008, Plaintiff was admitted to Mount Carmel to undergo the knee surgery. At Plaintiff's pre-surgery physical exam and on the day of surgery, Plaintiff asked representatives at Mount Carmel whether the hospital was an in-network provider.

In connection with the surgery, Plaintiff incurred medical bills totaling approximately $85,000.00 and submitted claims for payment of those bills to FMH. FMH paid 25% of the amount due to Mount Carmel, which is the out-of-network rate, and paid 80% of the amount due to Dr. Steensen, which is the in-network rate. Plaintiff filed this action to recover the medical costs she incurred at Mount Carmel that would have been paid if it had been considered to be an

2

in-network provider or if the services were covered under the Plan's exception allowing in-network payment when the plan participant received in-network care at a non-network provider.

In the amended complaint (ECF No. 16), Plaintiff alleged claims for relief against the Physician Defendants based upon state law, which the Physician Defendants moved to have dismissed (ECF No. 30). This Court granted in part and denied in part the Physician Defendants' motion, granting it in regards to Plaintiff's claim for professional negligence and denying it in regards to Plaintiff's claims for negligent misrepresentation and promissory estoppel. (ECF No. 43.)

Plaintiff alleged these same state law claims against the Health Plan Defendants. Plaintiff, however, moved to dismiss her claims of negligent misrepresentation and professional negligence against the Health Plan Defendants, which this Court granted. (ECF No. 59.) Plaintiff also alleged claims against the Health Plan Defendants for entitlement to benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), failure to provide requested Plan documents required by ERISA, 29 U.S.C. § 1132(c), and for failure to provide notice of entitlement to continuing coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161, *et. seq.* ("COBRA").

On May 8, 2009, the Health Plan Defendants filed the Health Plan Defendants' Motion for Summary Judgment and for Judgment on the Pleadings (ECF. No. 39), and on July 31, 2009, Plaintiff filed Plaintiff's Motion for Leave to File Sur-Reply *Instanter* (ECF. No. 54). After consideration of both of those motions, this Court issued an Opinion and Order in which it indicated that it could not appropriately decide the motions because the parties had failed to file the administrative record, which it ordered the parties to do. (ECF. No. 59.) The parties timely

complied with the Court's order, jointly filing the administrative record. (ECF No. 60.)

Once the administrative record was filed, the Court again reviewed the Health Plan Defendants' Motion for Summary Judgment and for Judgment on the Pleadings and Plaintiff's Motion for Leave to File Sur-Reply *Instanter*. On January 5, 2010, the Court issued an Opinion and Order in which it denied the Health Plan Defendants' Motion for Summary Judgment and for Judgment on the Pleadings, denied as moot Plaintiff's Motion for Leave to File Sur-Reply *Instanter*, remanded the action to the Plan administrator with instructions to conduct a timely, full and fair review of Plaintiff's benefits claim, and administratively closed the case pending completion of the administrative appeal process. (ECF. No. 61.) The Court also directed the parties to contact the Court within one week of the final administrative decision so that, if necessary, the case could be restored to the active docket.

On April 8, 2010, the parties contacted the Court to inform it that the administrative process was complete and that FMH had upheld the denial of Plaintiff's request for benefits. The Court scheduled a status conference for April 14, 2010. (ECF. No. 62.) As a result of the conference, the Court restored this case to its active docket, entered judgment against Plaintiff and in favor of the Health Plan Defendants on Plaintiff's claim for relief filed under COBRA, directed the parties to supplement the administrative record filed before this Court, and set forth a schedule to accommodate the discovery and briefing of the remaining issues that were before the Court. (ECF. No. 63.)

The issues remaining before the Court were (1) review of the benefits denial; (2) Plaintiff's promissory estoppel claim against the Health Plan Defendants; (3) Plaintiff's claim that the Health Plan Defendants failed to provide requested Plan documents; and (4) Plaintiff's

negligent misrepresentation and promissory estoppel claims against the Physician Defendants. The parties agreed that after this Court determined the first three issues, which deal only with the Health Plan Defendants, it would schedule a status conference to determine how the fourth issue, dealing only with the Physician Defendants, would be addressed.

Plaintiff filed a motion for judgment on the administrative record (ECF No. 73) and the Health Plan Defendants filed supplements (ECF Nos. 72, 78) to their previously filed dispositive motion (ECF No. 39). On October 26, 2010, the Court issued an Opinion and Order in which it granted judgment on the administrative record to the Health Plan Defendants, granted summary judgment to the Health Plan Defendants on Plaintiff's promissory estoppel claim, and denied summary judgment on Plaintiff's non-disclosure claim. (ECF No. 82.)

On December 6, 2010, this Court held a status conference with Plaintiff and the Physician Defendants, setting forth a schedule to address the remaining claims against these defendants. Pursuant to that schedule, the Physician Defendants filed a motion for summary judgment that is now ripe for review.

## II.  Standard

Summary judgment is appropriate "if the movant shows that there is not genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### III.  Discussion

Plaintiff alleges claims for promissory estoppel and negligent misrepresentation against the Physician Defendants.  Plaintiff testified that Columbus Orthopaedic Group employee Debie Spain represented to Plaintiff on two occasions that her insurance provider informed Spain that Dr. Steensen and Mount Carmel were both in-network providers under the Plan.  Mount Carmel, however, was not an in-network provider and, consequently, Plaintiff's insurance covered only 25% of the cost of her hospital stay as opposed to 80%, which is the percentage covered for

preferred providers. The elements of a claim of promissory estoppel are: "(1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance." *Current Source, Inc. v. Elyria City Sch. Dist.*, 157 Ohio App. 3d 765, 773 (Ohio Ct. App. 2004) (citing *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App. 3d 281, 284 (Ohio Ct. App. 1992)). *See also Brown v. Columbus Bd. of Educ.*, 638 F. Supp. 2d 856, 868 (S.D. Ohio 2009) (citing *Healey* for this promissory estoppel standard).

> The elements of negligent misrepresentation are as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis added.) Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1), applied by this court in *Gutter v. Dow Jones, Inc.* (1986), 22 Ohio St. 3d 286, 22 OBR 457, 490 N.E. 2d 898, and *Haddon View Investment Co. v. Coopers & Lybrand* (1982), 70 Ohio St. 2d 154, 24 O.O. 3d 268, 436 N.E. 2d 212.

*Delman v. Cleveland Heights*, 41 Ohio St. 3d 1, 4 (Ohio 1989). *See also Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 516 (6th Cir. 199) (citing case that quotes this standard from *Delman*).

The Physician Defendants request summary judgment on both of Plaintiff's claims, arguing that the law of the case doctrine requires dismissal of the claims and that, regardless of the law of the case, Plaintiff has failed to raise any genuine issue of material fact as to either claim. Plaintiff, in response, argues that the law of the case doctrine actually precludes dismissal of her claims, and that even if it did not, there are issues of material fact that prevent this Court from entering judgment as a matter of law.

7

### A. Law of the Case Doctrine

#### 1. Defendants

The Physician Defendants claim that in a previous decision issued in this case, this Court determined that Plaintiff's reliance upon the representations made by Spain was not reasonable or justifiable. The Physician Defendants therefore conclude that the law of the case doctrine requires the Court to reiterate its conclusion in this decision, thereby preventing Plaintiff from meeting the reasonable reliance elements of her promissory estoppel and negligent misrepresentation claims. *See Rouse v. DaimlerChrysler Corp. UAW*, 300 F.3d 711, 715 (6th Cir. 2002) ("Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."). The Physician Defendants, however, mischaracterize this Court's previous finding.

In the decision upon which the Physician Defendants rely, the Court did not find that Plaintiff's reliance upon Spain's representation was unreasonable or not justified. Instead, the Court analyzed a completely separate element of Plaintiff's promissory estoppel claim filed against the Health Plan Defendants that is not an element of Plaintiff's promissory estoppel claim filed against the Physician Defendants. Plaintiff's promissory estoppel claim against the Health Plan Defendants was brought within the context of an ERISA action, which is governed by federal common law. *See Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991) ("ERISA authorize[s] the federal courts to fashion a body of federal common law to enforce the agreement that these statutes bring within their jurisdiction.") (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988)). Whereas, Plaintiff's claims against the Physician Defendants are filed under the law of the state of Ohio, which is set forth *supra*. Plaintiff has no

ERISA claim against the Physician Defendants.

The elements of a promissory estoppel claim in the context of an ERISA action are:

1) conduct or language amounting to a representation of material fact;

2) awareness of the true facts by the party to be estopped;

3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;

4) unawareness of the true facts by the party asserting the estoppel; and

5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Id.* at 1298 (citation omitted).  The Physician Defendants contend that in its earlier decision this Court analyzed the fifth element of this claim, *i.e.*, detrimental and justifiable reliance.  The Court, however, did not analyze the fifth element, but instead analyzed the fourth element, stating:

> The Health Plan Defendants argue that Plaintiff cannot meet the fourth element [of her promissory estoppel claim filed against them].  This Court agrees.
> . . .
> Even when viewing all of the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, her estoppel claim fails.  That is, Plaintiff argues and presents evidence supporting only that she had no actual knowledge of the fact that Mount Carmel was not an in-network facility.  The fourth element of her estoppel claim, however, requires that Plaintiff possessed *either* actual knowledge of the truth or had the means by which with reasonable diligence she could acquire the knowledge.

(ECF No. 82 at 22) (emphasis in original) (citing *Trustees of the Michigan Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 593 (6th Cir. 2000) (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 n.10 (1984)).  The Court did not address whether Plaintiff's reliance was

reasonable or justifiable. Thus, the law of the case doctrine does not operate to establish any authority regarding Plaintiff's reliance on Spain's representations.

### 2. Plaintiff

Plaintiff argues that the law of the case doctrine precludes summary judgment in favor of the Physician Defendants for two reasons. First, Plaintiff contends that the "Physician Defendants set forth arguments nearly identical to those which this Court already rejected in ruling upon the Physician Defendants' Motion to Dismiss." (ECF No. 91 at 5.) Plaintiff relies on this Court's conclusion that she set forth claims for promissory estoppel and negligent misrepresentation that were plausible on their face. (ECF No. 43 at 8, 9.) A decision on a motion to dismiss, however, does not establish the law of the case for purposes of summary judgment. *See McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 513 (6th Circuit 2000) ("our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery"). The Sixth Circuit has explained:

> Our earlier ruling affirmed the denial of the defendants' motion to dismiss; we ruled that as a matter of law, the allegations of Wilkins's *complaint* stated a claim for First Amendment retaliation. *Wilkins*, 1996 U.S. App. LEXIS 5711, 1996 WL 84649 at *3-*5. In granting the defendants' motion for summary judgment, the matter before us here, the district court held that the evidence introduced by Wilkins for purposes of summary judgment failed to raise a material issue of fact as to his retaliation claim and that the evidence did not support Wilkins's claim that his speech concerned matters of public interest. These are two separate issues.

*Wilkins v. Jakeway*, 44 F. App'x 724, 728 (6th Cir. 2002) (internal citation omitted, emphasis in original) (citing *Soc'y of Roman Catholic Church of the Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 735 (5th Cir. 1997) (noting that application of the law of the case doctrine is inappropriate when the relevant issues are governed by different standards of review).

As to Plaintiff's second argument related to the law of the case doctrine, she contends that this Court has already held that the issue of whether Plaintiff's reliance was reasonable or justifiable is a factual inquiry inappropriate for determination in a decision on a dispositive motion.  Specifically, Plaintiff contends:

> In reliance on Sixth Circuit and Ohio precedent, this Court stated as follows:
>
>> In a claim for negligent misrepresentation under Ohio law, this Court has stated that "the issue of whether a party's reliance was justifiable is largely a question of fact inappropriate for resolution on a motion to dismiss." *In re Nat'l Century Fin. Enters.*, 580 F. Supp. 2d at 648–49 (citing *In re National Century Financial Enterprises, Inc., Inv. Litig.*, 541 F. Supp. 2d 986, 1004 (S.D. Ohio 2007) and *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 590 (6th Cir. 2000)). *See also Davis v. Montenery*, 173 Ohio App. 3d 740, 752, 2007 Ohio 6221 (Ohio Ct. App. 2007) ("[A] determination regarding justifiable reliance involves a fact-based inquiry into the circumstances of the claim and the relationship between the parties.").

(ECF No. 91) (citing ECF No. 43 at 9).

In the above-cited passage, the Court indicated that the issue of justifiable reliance is one that was largely inappropriate for resolution on a motion to dismiss–not on a motion for summary judgment.  Courts regularly delve into the facts related to the circumstances of the claim and the relationship between the parties on summary judgment to determine whether a party's reliance was reasonable or justifiable.  *See, e.g., Davis v. Montenery*, 173 Ohio App. 3d 740 (Ohio Ct. App. 2007) (affirming summary judgment on behalf of defendants; no justifiable reliance in negligent misrepresentation claim); *Lecrone v. Yates*, No. 02 CA 59, 2003 Ohio 1103, 2003 Ohio App. LEXIS 1045, at *13 (Ohio Ct. App. Mar. 11, 2003) (affirming trial court's finding that the reliance was not justifiable); *Three-C Body Shops, Inc. v. Welsh Ohio, LLC*, No. 02AP-523, 2003 Ohio 756, 2003 Ohio App. LEXIS 706, at *16 (Ohio Ct. App. Feb. 20, 2003)

11

("Because Three-C failed to present evidence sufficient to create a genuine issue of material fact on the element of justifiable reliance, the trial court properly granted summary judgment to Welsh on Three-C's claim for negligent misrepresentation.").

Accordingly, the law of the case doctrine does not preclude this Court from determining whether there is a genuine issue of material fact as to whether Plaintiff's reliance upon the Physician Defendants' representations was reasonable or justifiable.

**B. Elements of Plaintiff's Claims**

The Physician Defendants request summary judgment on Plaintiff's promissory estoppel and negligent misrepresentation claims. Both of these claims require a plaintiff's reliance upon the promise or representation made by the defendant to be reasonable, or justifiable. The Physician Defendants argue that Plaintiff has failed to raise any issue of material fact as to whether her reliance upon Spain's representations that Mount Carmel was an in-network provider was reasonable, or justifiable.[1] This Court agrees.

To determine whether a plaintiff's reliance was reasonable or justifiable, "this Court must inquire into the relationship between the parties." *Lapos Constr. Co. v. Leslie*, No. 06CA008872, 2006 Ohio 5812, 2006 Ohio App. LEXIS 5779, at *12 (citing *Crown Prop. Dev. Inc. v. Omega Oil Co.*, 113 Ohio App. 3d 647, 657 (Ohio Ct. App. 1996)). It must "consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances." *Farris*

---

[1] The Physician Defendants also argue that Plaintiff cannot meet any element of her promissory estoppel claim or her negligent misrepresentation claim as they relate to Dr. Steensen. Because of the Court's conclusion related to Plaintiff's reliance on Spain's representation, it is unnecessary for the Court to reach this argument.

*Disposal Inc. v. Leipply's Gasthaus Inc.*, No. 22569, 2005 Ohio 6737, 2005 Ohio App. LEXIS 6090, at *11 (quoting *Radice Partners Ltd. v. Angerman*, No. 90CA004861, 1991 Ohio App. LEXIS 209, at *12 (Jan. 16, 1991)).

> Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances. *Lepera v. Fuson* (1992), 83 Ohio App. 3d 17, 26, 613 N.E.2d 1060. However, there must be a balance between reliance and responsibility:
>
>> The rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own interests. There would seem to be no doubt that while in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary. (Citations omitted)

*Amerifirst Savings Bank of Xenia, Ohio v. Krug*, 136 Ohio App. 3d 468, 496 (Ohio Ct. App. 1999) (citing 50 Ohio Jurisprudence 3d (1984), Fraud and Deceit, § 132).

Further, "[a]lthough the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man." *Id.* (omission in original). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.* (quoting Restatement (Second) of Torts (1976), § 545A, Misrepresentation, Comment b). Finally, "Ohio law requires a person to exercise proper vigilance in dealing with others and, at times, to reasonably investigate before relying on statements or representations." *Harrel v. Solt*, No. 00CA027, 2000 Ohio 1964, 2000 Ohio App. LEXIS 6312, at *25 (Ohio Ct. App. Dec. 27, 2000) (citing *Foust v. Valleybrook Realty Co.*, 4 Ohio App. 3d 164, 165 (Ohio Ct. App. 1981); *Feliciano v. Moore*, 64 Ohio App. 2d

236, 241-242 (Ohio Ct. App. 1979)).

In the instant action, Plaintiff testified on deposition to the following: Her knee surgery that is at issue here was her twentieth orthopaedic surgery. In all prior surgeries, Plaintiff had health insurance coverage and had experience dealing with preferred provider organizations like the Plan, which she understood to be a preferred provider organization.

Before she underwent the surgery performed by Dr. Steensen, Plaintiff had on two other occasions telephoned FMH to determine if a provider was in-network. Specifically, on April 16, 2007, approximately eight months prior to her first visit with Dr. Steensen, Plaintiff telephoned FMH in an attempt to determine the in-network or out-of-network status of a medical provider. At that time, she was told to call Private Health Care System ("PHCS") to obtain that information and was given the telephone number to PHCS:

> Q. All right. And [the FMH representative] told you that in order for you to determine if a provider was in-network you had to call PHCS; right?
>
> A. Yes.
>
> Q. And she gave you the telephone number for PHCS; right?
>
> A. Yes.
>
> Q. So in April of 2007, about ten months before your surgery with Dr. Steensen, you knew that in order to determine if a provider was in-network you'd have to call PHCS; isn't that right?
>
> A. True.

(ECF No. 89-2 at 9.) Then again two months after this telephone call to FMH, on June 8, 2007, Plaintiff called FMH and was again told to contact PHCS to determine whether a provider was in her preferred provider network. The contact information to PHCS was also on Plaintiff's health insurance card, which had printed on its face: "To verify PHCS providers call (866) 297-9122 or

14

visit www.phcs.com." (ECF No. 89-2 at 22, Ex. 7.)

In dealing with Dr. Steensen and Mount Carmel, Plaintiff did not call PHCS to determine if Mount Carmel was an in-network provider. Nor did Plaintiff inform Dr. Steensen's office that it was necessary to contact PHCS to determine the preferred status of a medical provider under the Plan. She simply gave the office employee her insurance card.

At her deposition, Plaintiff authenticated two documents in which she agreed in writing that she was solely responsible for determining whether she had insurance coverage for services provided by Columbus Orthopaedic:

> Your policy is a contract between you and the insurance company. While we will assist as much as possible, it is your responsibility to be familiar with your coverage and contact them (*sic*) directly if you have questions.

(ECF No. 89-2, Ex. 4.)

> If you have questions about your insurance, we are happy to help you. Specific coverage issues are, however, should be (*sic*) directed to your insurance company's member service department (the number is on your card).

(ECF No. 89-2, Ex. 3.)

Plaintiff further testified that she was licensed as an insurance agent from January 2002 to April 2005. As an insurance agent, she occasionally sold individual health insurance policies, and was generally familiar with the terms of those policies. Plaintiff assisted in processing a health insurance claim while working as a licensed insurance agent.

Based on this testimony, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether she justifiably and/or reasonably relied upon Spain's representations. Plaintiff simply cannot be categorized as the "simple-minded or unwary" consumer Ohio seeks to protect with its estoppel law. *See Krug*, 136 Ohio App.3d at 496. Her

unique background of having had nineteen previous insurance-covered surgeries, personally making telephone calls to FMH about this specific issue just months before deciding to rely upon another to make that call, her knowledge that it was her responsibility to obtain the information–twice confirming this knowledge in writing, and her previous employment as a health insurance saleswoman renders her a sophisticated consumer of health insurance services.

Plaintiff certainly failed to exercise proper vigilance in dealing with this situation and to reasonably investigate it before relying on the representations of an employee of the Physician Defendants' about the preferred status of a hospital at which she was not even employed. *See Harrel*, 2000 Ohio App. LEXIS 6312, at *25. The Physician Defendants are in the business of providing medical services, not determining the contractual relationship between an insurer and an insured individual. A plaintiff, and particularly the sophisticated plaintiff here, who is a party to the contract, is in a far better position to make that determination.

Further, Plaintiff had ample opportunity to investigate whether the information regarding Mount Carmel was accurate. The procedure at issue here was a planned, non-emergency knee surgery. Plaintiff had the means available to investigate Mount Carmel's preferred provider status, and indeed, had recently done so before obtaining services from other medical providers.

Also, Plaintiff admits that she never informed Dr. Steensen's office that it needed to contact PHCS, and instead, relied upon the office employee to contact the appropriate entity. Plaintiff averred:

> From my conversations with Ms. Spain, it is my belief that FMH Benefit Services, Inc. informed Ms. Spain that the subject medical treatment would be *fully* covered by my health insurance plan, and that Mount Carmel West is within the preferred provider network.

(ECF No. 91-1 ¶ 7) (emphasis in original). Twice within the previous eight months, however,

Plaintiff had attempted to obtain information from FMH about the preferred status of a medical provider and was both times told that she was required to call PHCS to obtain that information. Thus, reason existed for Plaintiff to doubt the accuracy of Spain's statements that FMH had provided the preferred provider information. *See Lecrone*, 2003 Ohio App. LEXIS 1045, at 13-14 (affirming trial court's finding that the reliance was not justifiable when "a reason may have existed for [the plaintiff] to doubt the veracity of [the defendant's] statement").

The Court's analysis applies with equal force where a plaintiff delegates the responsibility to a third party even though she has the means of determining the facts herself. *See Rorig v. Thiemann*, No. 1:05cv80, 2007 U.S. Dist. LEXIS 62902 (S.D. Ohio, August 27, 2007) (because the plaintiff expressly agreed that she bore responsibility to obtain and review the information pertinent to the finances of the apartment buildings, she could not avoid the consequences of her failure to do so by delegating that task to a third party). Similarly, in the case *sub judice*, Plaintiff had the means to obtain the information and expressly agreed that it was her responsibility to do so; she cannot now claim that she justifiably relied upon information provided to her by a third party to whom she delegated the task.

A final reason the Court has considered in reaching its conclusion that Plaintiff's reliance was not reasonable or justifiable is that Plaintiff sought and obtained information directly from Mount Carmel regarding its preferred provider status. That is, Plaintiff made an independent inquiry regarding whether Mount Carmel was an in-network provider by asking representatives of the hospital. She testified that hospital representatives on two occasions told her that the hospital was an in-network provider. Both of those occasions occurred after Spain had provided Plaintiff the inaccurate information about Mount Carmel. Plaintiff testified that she relied on the

representations made to her by the hospital employees at her pre-surgical appointment and on the day she was admitted to the hospital for the knee surgery. Plaintiff testified that she would have cancelled the surgery on the day it was scheduled if the representative at Mount Carmel had not told her on that day that the hospital was a preferred provider, regardless of what she had been told by Spain. Ohio courts regularly hold that a plaintiff's inquiry to an independent source prohibits a finding of reasonable or justifiable reliance. *See e.g., Johnson v. Church of the Open Door*, 179 Ohio App. 3d 532, 540 (Ohio Ct. App. 2008) ("the [plaintiff and his wife] continued to be wary about [the investment] and contacted others who had invested with him. . . . Under these circumstances, their reliance on [the defendant's] statements was not justified as a matter of law"); *Christian v. McLaughlin*, No. 19064, 1998 Ohio App. LEXIS 6421 at *6 (Ohio Ct. App. Dec. 30, 1998) ("resort to these outside sources and the continuing suspicion of problems with the house show that any reliance on [the agent's] representations was no longer justified");

    Accordingly, even when viewing the evidence before the Court in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court concludes that no reasonable jury could find that Plaintiff's reliance was reasonable or justifiable. Therefore, the Physician Defendants are entitled to summary judgment on Plaintiff's promissory estoppel and negligent misrepresentation claims.

## IV.  Conclusion

For the reasons that follow, the Court **GRANTS** the Motion of Defendants Columbus Orthopaedic Group, Inc. and Robert Steensen, M.D. for Summary Judgment.  (ECF No. 88.)

The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**
